**DANIEL HAMM DRAYAGE CO. et al. v. WILLSON et al.**

No. 13795.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1949.

634

Henry C. Lamkin, St. Louis, Mo. (Cobbs, Logan, Armstrong, Teasdale & Roos, St. Louis, Mo., on the brief), for appellants.

George A. McNulty, St. Louis, Mo., for appellee George C. Willson, Trustee of Laister-Kauffmann Aircraft Corporation.

Robert D. Abbott, Clarence M. Barksdale and Barksdale, Abbott & Thies, St. Louis, Mo., on brief for appellees Laister-Kauffmann Aircraft Corporation, Debtor, and Stockholders Committee of Laister-Kauffmann Aircraft Corporation.

Allen C. Holmes and Jones, Day, Cockley & Reavis Cleveland, Ohio, on brief for appellee Tucker Industries, Inc.

Jess H. Rosenberg, Attorney, Department of Justice, Washington, D. C. (H. G. Morison, Assistant Attorney General, Drake Watson, United States Attorney, St. Louis, Mo., Joseph M. Friedman, Special Assistant to the Attorney General, William V. O'Donnell, Assistant United States Attorney, St. Louis, Mo., and Alexander J. Filipiak, Legal Assistant, United States Air Force, on the brief), for appellee United States.

Samuel H. Liberman, St. Louis, Mo., for appellee Mississippi Valley Trust Co.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal taken by two general creditors of Laister-Kauffmann Aircraft Corporation, Debtor, from an order of the District Court authorizing and directing the trustee to accept a settlement of a terminated contract offered by the United States acting under the provisions of the Contract Settlement Act, 41 U.S.C.A. §§ 101–125, and of the contract. The contract was for the production of 100 cargo gliders for the sum of $14,068,377.50. The final termination claim of the debtor was for $4,427,000.00, exclusive of termination claims of subcontractors. The tentative negotiated settlement offered by the Government and recommended by the trustee was for $3,685,000.00, less certain partial payments and credits. This tentative negotiated settlement does not include termination claims of subcontractors with whom the Government proposed to make direct settlement. As a matter of accounting the settlement would yield a net to debtor of $482,344.06.

Laister-Kauffmann Aircraft Corporation held a prime contract for the production of 100 gliders. On February 12, 1946, the Government terminated the contract for convenience of the Government and in turn Laister-Kauffmann Aircraft Corporation terminated its subcontracts and filed its termination claim. Pending negotiations it filed a petition in reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. At the beginning of the negotiations between Government officials and the trustee for settlement of the termination claim, the Government contended that the debtor had been overpaid several hundred thousand dollars and the Government filed claim in the District Court for $500,000.00, on account of such alleged overpayment, but as the result of negotiations the Government finally made an offer which was ultimately presented to the court by the trustee with recommendation of approval. The Government's offer was conditioned that (1) the contracting officer would not recommend the offer to higher government authority unless the trustee would recommend it to the court and (2) the trustee would agree to direct settlement by the

Government with the terminated claims of subcontractors. The trustee accordingly filed his report recommending acceptance of the offer on the terms and conditions mentioned and asked for a hearing. The court set the matter down for hearing and the trustee gave notice to all concerned. At the hearing 60 per cent of the dollar value of general creditors and 80 per cent of the dollar value of terminated subcontractors were represented and evidence was offered on behalf of the trustee and the Government. No evidence whatever was offered by the debtor or any stockholder or creditor but counsel for the debtor and counsel for certain of the stockholders and general creditors cross-examined the witnesses produced. As the result of this hearing the court found, " * * * that there has been presented to the Court no evidence warranting the conclusion that rejection of the offer and subsequent litigation would produce an ultimate result more beneficial to those interested in the matter than that afforded by the settlement offer, and the Court finds that the best interests of the Debtor require that the settlement offer be accepted; the Court further finds that the proposed settlement by the United States Government with the subcontractors, whose subcontracts were terminated, of the unsettled termination claims of said subcontractors is warranted by the provisions of the contract and applicable law and regulations, and that the Trustee is not entitled to require payment to him, as assets of the estate of Debtor or otherwise, of the amounts payable in such settlement of said termination claims."

Appellants are general creditors. One of them performed services in hauling for the debtor, most of which were performed after the termination of the contract. The claim of the other appellant is for rent of buildings during the period from January 1, 1946 to July 15, 1946 and for other expenses incident thereto. The debtor's contract was terminated on February 12, 1946, and hence most of this rent accrued after termination. Other facts will be developed during the course of this opinion.

In seeking reversal appellants contend that (1) the court erred in approving a settlement that is inequitable and unconscionable and (2) that the order of the court approving the proposed settlement violates the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. .

■ Appellants' presentation seems to be bottomed on the theory that the contested issues are triable *de novo* in this court. Our inquiry, however, is limited to the question as to whether the District Court has acted arbitrarily or has clearly abused its discretion. Appellants and all other interested parties were given a full opportunity to be heard with respect to the application of the trustee for authority to accept the compromise settlement offered by the Government. As the result of that hearing the offer of settlement was approved. In such circumstances this court would not be warranted in reversing the order of the District Court unless it clearly appears that the court has acted arbitrarily and in abuse of a judicial discretion, or that the compromise itself is not for the best interests of the estate. In re Kansas City Journal-Post Co., 8 Cir., 144 F.2d 816; In re Prudence Co., Inc., 2 Cir., 98 F.2d 559; In re Batavia Metal Products, Inc., 7 Cir., 166 F.2d 7; Scott v. Jones, 10 Cir., 118 F.2d 30; Fernow v. Gubser, 10 Cir., 136 F.2d 971. In Re Kansas City Journal-Post Co., supra, there was an appeal from an order approving settlement of an alleged liability on a claim against the debtor. Referring to the scope of our inquiry on appeal we there said, [144 F.2d 817], "Where creditors have not been denied or improperly deprived of the opportunity to exercise any of these rights, and the compromise has been approved, such a discretionary approval will not be set aside on appeal, unless the record clearly demonstrates that the court otherwise has acted arbitrarily or that the compromise itself actually is not for the best interest of the estate—and with special force is this true where the compromise has had the approval of both the referee and the District Court."

In Re Prudence Co., supra, in an opinion by the Second Circuit, it is among other things said [98 F.2d 560], "The very purpose of a compromise is to avoid the determination of sharply contested and

dubious issues, as this court pointed out in the case of In re Riggi Bros. Co., 2 Cir., 42 F.2d 174, 176. Hence, to succeed upon this appeal the appellant must show, assuming there are no issues of fact in dispute, that the rules of law for which she is contending are so clearly correct that it was an abuse of discretion for the district court to approve the settlement, since such approval presupposes some probability of validity in the government's tax claim."

The matter before the District Court called for the exercise of a judicial discretion by that court. The issue on appeal is whether or not that court abused that discretion and not what this court in its discretion might determine. In the negotiations which preceded the offer of settlement of debtor's termination claim, the claim was broken down by debtor into seven accounts. A similar breakdown was made in the claim by the Government. A detailed examination of the difference between the various items would greatly lengthen this opinion and would seem to serve no useful purpose. Suffice it to say that there was a dispute as to the fairness or correctness of each of the several accounts. The trustee in his report among other things said, "While the Trustee believes that the settlement offer is substantially below what should be allowed the Debtor, within the letter and spirit of the Contract Settlement Act and the Joint Termination Regulations, and is, therefore, inadequate, it is the belief of the Trustee that he should recommend the acceptance of the offer unless he is able to offer to those interested, with some confidence, an assurance that rejection of the offer and subsequent litigation would produce an ultimate result more beneficial to those interested in the matter than that afforded by the settlement offer. This the Trustee finds himself unable to do, and, accordingly, he recommends acceptance. This recommendation should be considered in the light of the legal questions hereinafter presented."

The reasons for the trustee's recommendations of acceptance are then pointed out in some considerable detail. Both the trustee and the court gave careful consideration to the alternatives available if the offer were rejected. The Contract Settlement Act embodies a complete code of procedure. If no settlement is effected the contractor may appeal from the contracting officer's determination to an Appeal Board, and from its decision may appeal to the Court of Claims. The procedure provided in the Act is exclusive. Section 3(m) reads as follows: "The term 'final and conclusive', as applied to any settlement, finding, or decision, means that such settlement, finding, or decision shall not be reopened, annulled, modified, set aside, or disregarded by any officer, employee, or agent of the United States or in any suit, action, or proceeding except as provided in this Act."

In such circumstances the remedy provided must be exhausted before recourse may be had to any court other than as prescribed in the statute. The trial court, commenting upon this situation, among other things said,

"Now, what hope can I have of bettering this estate by prolonging the consummation of this settlement? I certainly can't just bluntly say to the trustee, 'You go back and try to get some more,' in view of what this record shows; and I can not bring myself to the point where I want to gamble for the money in this estate with the hope of making perhaps another hundred thousand dollars income for it by saying, 'Go on up to the Board of Appeals,' because it might lose a half a million dollars by going up there in place of gaining $100,000.00 or $200,000.00.

"* * * Now, then, we have got the question that is later found to be the guide, the biggest question, of the cost or estimated cost of appeal of approximately $100,-000.00. * * *."

The contracting officer testified that he had nothing further to offer and that he had obtained approval of the existing offer from the Settlement Review Board by a narrow margin and that the offer could not be increased, and if not accepted the contracting officer would prepare his "formula determination" which on appeal would be accepted as "prima facie correct." The cost of prosecuting such an appeal was es-

timated at $100,000.00. The District Court, in commenting on the situation, among other things said,

"* * * no evidence warranting the conclusion that rejection of the offer and subsequent litigation would produce an ultimate result more beneficial to those interested in the matter than that afforded by the settlement offer * * *.

"* * * Nobody has offered any evidence that if it were turned down a better settlement could be obtained. *. * * "

■ Under Section 27 of the Bankruptcy Act, 11 U.S.C. § 50, the prerequisite to judicial approval of a compromise effected by a trustee is that the compromise shall be deemed to be "for the best interest of the estate." The trial court after a most careful consideration of every factor brought to its attention, reached the conclusion that this settlement was for "the best interest of the estate." In reaching this conclusion we can not say that the court abused its judicial discretion, but on the contrary we are disposed to the view that in entering the order approving the offer of settlement the court's discretion was wisely exercised. The settlement being in "the best interest of the estate" can not be said to be "inequitable and unconscionable."

■ It remains to consider the contention of appellants that the order appealed from is violative of the provisions of the Bankruptcy Act. The settlement as approved permits the Government to settle directly the claims of subcontractors so that the amount due the subcontractors will not become a part of the debtor's estate. The Contract Settlement Act provides for direct settlement of termination claims of subcontractors where the prime contractor is insolvent 41 U.S.C.A. §§ 101–125. The Contract Settlement Act anticipated that at the conclusion of the war many ramifications and special circumstances would be presented and the Act provided for the exercise of considerable discretion on the part of the Government in effecting a settlement of the termination claims of both the prime contractors and subcontractors. With the wisdom of these provisions we need not concern ourselves. The Act provided for optional mode of settlement.

Thus, Section 7(b) of the Act, 41 U.S.C.A. § 107(b), provides that, "Whenever any contracting agency is satisfied of the inability of a war contractor to meet his obligations it shall exercise supervision or control over payments to the war contractor on account of termination claims of subcontractors of such war contractor to such extent and in such manner as it deems necessary or desirable for the purpose of assuring the receipt of the benefit of such payments by the subcontractors."

And, further, in Section 7(d) of the Act it is provided that, "Any contracting agency may settle directly termination claims of subcontractors to the extent that it deems such action necessary or desirable for the expeditious and equitable settlement of such claims. In making such termination settlements any contracting agency ·may discharge the claim of the subcontractor by payment or may purchase such claim, and may agree to assume, or indemnify the subcontractor against, any claims by any person in connection with such claim or the termination settlement. Any contracting agency undertaking to settle the termination claim of any subcontractor shall deliver to the subcontractor and the war contractor liable to him written notice stating its acceptance of responsibility for settling his claim and the conditions applicable thereto, which may include the release, or assignment to the contracting agency, of his claim against the war contractor liable to him; upon consent thereto by the subcontractor, the Government shall become liable for the settlement of his claims upon the conditions specified in the notice."

It is to be observed in this connection that the contract between the United States and the debtor contains provision authorizing the prime contractor to settle claims of terminating subcontractors only "with the approval or ratification of the contracting officer to the extent that he may require." Article XXX(e) of the prime contract contains provision that, "The obligation of the Government to make any payments under this Article; * * * (2) in the discretion of the contracting officer shall be subject to deduction in respect of the amount of any claim of any subcontractor or sup-

plier whose subcontract or order shall have been terminated * * *."

Article XXX of the contract between the debtor and the Government (1) gave the right to terminate the contract; (2) required the prime contractor upon receipt of notice of termination to terminate all subcontracts; (3) required the prime contractor to assign to the Government all its right, title and interest under terminated subcontracts; (4) required the prime contractor to settle all claims arising out of the termination of subcontracts "with the approval and ratification of the contracting officer to the extent he may require." The only right conferred upon the prime contractor by the contract so far as it refers to the receipt of money from the Government on account of the termination claims of subcontractors was limited to the actual payment made by the prime contractor to the subcontractors in settlement of their claims for termination. The contract between the Government and the prime contractor in respect to the claims of subcontractors for fair compensation on account of the termination of their subcontracts was a contract for the benefit of the tracts was a contract for the benefit of the subcontractors. The subcontractors were third party beneficiaries. The prime contractor acquired no right to receive the money due the subcontractors on the termination settlements and hence it became no part of the debtor's estate. In Restatement on Contracts, Section 136, it is said, "A contract to satisfy a duty of the promisee to another is an intangible asset of the promisee, peculiar in this respect, that it cannot generally be made available by any creditor other than the beneficiary."

In the illustrations given in Restatement on Contracts appears the following: "5. A owes C $100.00. For sufficient consideration B promises A to pay the debt to C. A subsequently becomes bankrupt. C may recover from B to the exclusion of A's trustee in bankruptcy."

In the instant case the Government was responsible for the termination and undertook to discharge the liability resulting, or rather the duty under the statute and contract, by paying the subcontractors directly.

So far as the collection of monies on account of termination claims of subcontractors, the prime contractor was a mere agency or trustee. As such the only power which the debtor had with respect to the amounts payable on account of the termination claims of subcontractors could be exercised for the benefit of the subcontractors. The trustee here became vested only with title to "powers which he (the bankrupt) might have exercised for his own benefit, but not those which he might have exercised solely for some other person". 11 U.S.C.A., § 110, sub. a(3). The weakness of the appellants' contention lies in the fact that it assumes that the monies payable under the contract on account of the termination claims of the subcontractors constituted property or assets or a claim which belonged to the debtor and which passed to the trustee. The debtor in the instant case did not control and could not collect the amounts which the Government had promised to pay for the benefit of the subcontractors; hence, there was nothing which passed to the trustee. The subcontractors had the independent right to collect and receive from the Government the amounts due them on termination of their contracts.

The order appealed from does not violate any provision of the Bankruptcy Act relative to priorities or preferences because there is no depletion of the assets of the debtor. National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042; Continental & Commercial Trust & Savings Bank v. Chicago Title & T. Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268; Citizens' Nat. Bank of Gastonia, N. C., v. Lineberger, 4 Cir., 45 F.2d 522; 3 Collier Bankruptcy, 14th Ed., Par. 60.26. The subcontractors' termination claims not being part of the assets of the debtor's estate, the Bankruptcy Act does not limit in any way the right of the Government to pay the subcontractors directly. The ultimate liability for the payment of the termination claims of the subcontractors was on the United States and the Government by contract had the option at its discretion to assume privity of liability by paying directly to the terminating subcontractors. The Government

having discharged its liability to the sub-contractors, in no manner prejudiced or interfered with any assets owned by the debtor.

The order appealed from is therefore affirmed.