Leonard ASHBACH et al., Appellants,

v.

C. M. KIRTLEY, Trustee of Automatic Washer Company, Debtor, Joseph Abrams and Richland Securities, Inc., and Securities and Exchange Commission, Appellees.

CREDITORS' COMMITTEE FOR the UNSECURED CREDITORS OF the AUTOMATIC WASHER COMPANY, Debtor, consisting of Harvey Gill of Sun Steel Company of Chicago, Illinois, Chairman; J. L. Wellinger of Electronic Timers Corp. of Warsaw, New York; C. H. Cuny of United Air Lines of Chicago, Illinois; R. Sowinski of Star Machine Products Co. of Milwaukee, Wisconsin; H. J. Luke of Servel Incorporated of Evansville, Indiana; C. E. Davis of Croname, Inc. of Chicago, Illinois, Appellants,

v.

C. M. KIRTLEY, Trustee of Automatic Washer Company, Debtor, Joseph Abrams and Richland Securities, Inc., and Securities and Exchange Commission, Appellees.

Nos. 16622, 16623.

United States Court of Appeals
Eighth Circuit.

April 10, 1961.

Leonard Gesas and I. Harvey Levinson, Chicago Ill., for appellants. Harold S. Lansing, and Melvin E. Levinson, Chicago, Ill., on the brief.

David Ferber, Asst. Gen. Counsel, Securities & Exchange Commission, Washington, D. C., for Securities & Exchange Commission, appellee. Walter P. North, Gen. Counsel, and Paul J. Kemp, Atty., Securities & Exchange Commission, Washington, D. C., and J. Kirk Windle and William D. Scheid, Attys., Securities & Exchange Commission, Chicago, Ill., on the brief.

Howard A. Steele, Des Moines, Iowa, for appellee, C. M. Kirtley, Trustee of Automatic Washer Co., debtor. W. Z. Proctor and Harris M. Coggeshall, Des Moines, Iowa, on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

VOGEL, Circuit Judge.

These two appeals, No. 16,622 by a stockholders' committee and No. 16,623 by an unsecured creditors' committee, seek to have reversed an order of the District Court made September 2, 1960, in a proceeding for reorganization of the debtor, Automatic Washer Company, under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The order complained of directed the trustee to settle, upon receipt of $95,000 plus an additional amount approximating $10,000 already in the trustee's hands, a judgment in the amount of $520,911.85 recovered against one Joseph Abrams and Richland Securities, Inc., a corporation owned by him, and based upon fraud, conversion and unjust enrichment. The order also directed that the trustee, in further consideration of the $105,000, give a covenant not to sue Abrams and Richland Securities, Inc., and to dismiss, insofar as they were concerned, an action pending against them and others brought pursuant to § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p (b).

The debtor, a Delaware corporation with its principal place of business at Newton, Iowa, had for many years been engaged in the manufacture and sale of washing machines and more recently of ammunition containers for the United States government. Financial difficulties led to the filing of a petition for reorganization under Chapter X of the Bankruptcy Act. The petition was approved on November 2, 1956. Reorganization of the debtor was not successful and the trustee filed a plan for liquidation of assets and distribution of the proceeds. Such plan as amended was approved on December 17, 1957, properly accepted by the creditors and stockholders and confirmed by the court on February 22, 1958.

All of the physical assets of the debtor have now been sold and in the main distributed. Secured creditors have been paid in full. Unsecured creditors have been paid approximately $480,000, representing 80% of their total claims. An additional amount of approximately $120,000 would be required to pay the balance. The stockholders have received nothing.

As of the time of the hearing, which resulted in the order complained of, the trustee had but $28,000 in cash. At this hearing the trustee's New York counsel stated that approximately 3300 hours had been expended on the trustee's litigation and that he had received, on account only, $30,100 for services estimated to be worth $100,000. In addition thereto, the trustee owed fees to other counsel plus administrative costs incurred subsequent to April 1, 1959.

The only remaining business of the trustee is the prosecution of pending and prospective lawsuits and the collection of judgments already obtained. Among the latter are (1) the $520,911.85 judgment against Abrams and Richland Securities with which the appealed-from order is mainly concerned, and (2) a judgment in the amount of $1,140,000, obtained subsequent to the date of the order, against Bankers Life and Casualty Company of Chicago, Illinois. There are substantial additional amounts involving pending or proposed litigation.

In the judgment against Abrams and Richland Securities $154,000 thereof represented proceeds from the sale of stock obtained by Abrams through the

breach of a fiduciary obligation, thereby establishing a constructive trust. Abrams appealed from the judgment to the United States Court of Appeals for the Second Circuit, where the case is now pending. The appeal was without supersedeas bond. Efforts on behalf of the trustee and his counsel to collect on the judgment have resulted in obtaining approximately $10,000 mainly through attachment of Abrams' checking account. Other than that, efforts to collect the judgment have availed the trustee nothing.

Abrams is presently confined in prison, serving concurrent sentences for conversion of government property and income tax evasion. In this state of affairs, Abrams, through his counsel, has offered to pay $95,000 in cash, in addition to the approximately $10,000 the trustee has already seized, as full settlement of the judgment against him in the amount of $520,911.85 and also of all other claims of the debtor's trustee against him and Richland Securities, Inc., including the "short swing profits" action pending against him, his wife, Richland Securities and one David Schindler and the latter's wife. In such action, it is alleged that Abrams, Schindler and their wives acquired 330,000 shares of the debtor's stock for cash; that they sold the stock within a 6-months period at a profit in the neighborhood of $1,000,000. Jurisdiction of such action is dependent upon ownership of 10% of the debtor's stock by an association or syndicate made up of Abrams, Schindler and their wives.

The order directing the settlement was entered upon the filing of an "Application of Trustee for Instructions and/or Authority to Settle" and after a hearing held on September 2, 1960, upon notice to the parties of record but not on general notice to the debtor's creditors and stockholders.

Other than the trustee and his attorneys, appearances at the hearing included representatives of the Securities and Exchange Commission, the Creditors' Committee, Servel Company (the largest general creditor), general creditors and

Bankers Life and Casualty Company. The Stockholders' Committee, appellants in No. 16,622, was not represented although its counsel received notice.

In his application for instructions with reference to the Abrams offer of settlement (which included a report to the court), the trustee stated that he "has not come to any conclusion as to whether the proffered settlement should be accepted; * * * but collection of the judgment appears to be an uncertainty and the trustee appears to lack adequate funds to pay for services already rendered and has no right to command the attorneys to expend their time and efforts hereafter without any certain prospect of payment." Neither the trustee nor any of his counsel affirmatively recommended the proposed settlement. The trustee's written application asked, *inter alia:*

"3. Shall the trustee accept Abrams' offer of settlement, and if not, how shall he compensate his attorney for future services in defending and collecting the judgments?

"4. Speaking generally, what shall be the course to be taken in the estate of the future in view of the limited funds available with certainty to the trustee?"

The trustee also requested the court to fix a date for a hearing thereof, direct that notice of such hearing be given to the parties of record, and that at the hearing the views of those interested should be solicited and the trustee instructed how to proceed with respect to the matters therein raised.

At the hearing, no testimony was introduced but the trustee's verified application and report was considered and his local counsel, as well as his New York counsel, made statements. Counsel for some creditors expressed themselves as being in favor of accepting the Abrams offer of settlement but counsel for the appellant Creditors' Committee thought that "it should be further explored, * * as to the assets of Mr. Abrams, if they are available to the trustee of this es-

tate." The Securities and Exchange Commission objected to the Abrams settlement, suggested examining Abrams and making further investigations in an effort to locate his assets. The Commission further objected to the settlement on the ground that it was not clear whether the covenant not to sue Abrams on the short swing profits action might not be raised as a defense by the other defendants therein who were allegedly financially able to respond to a substantial judgment if one were obtained against them. It was further suggested, in answer to the trustee's query as to how he could compensate his attorney for future services in defending and collecting the judgment, that an effort be made to arrange for the continuance of such work on a contingent fee basis. After hearing counsel, the court stated:

"It is the view of the Court that because of the uncertainty of the whole situation, that the Abrams' settlement should be accepted, provided it can be without prejudice to the claim of Mr. Purcell." [Undoubtedly the court there meant Mr. Schindler.]

The court also stated:

" * * * We have distributed so much that we now find ourselves stranded for administration expenses."

In its order directing settlement the court stated:

" * * * that Richland Securities Inc. has no assets and it does not appear that assets, if any, of Joseph Abrams can be located and applied to the satisfaction of said judgment without extensive litigation, the outcome of which is doubtful; that numerous claims including tax claims of the United States in very substantial amounts appear to exist against Joseph Abrams and render doubtful the trustee's ability to realize in full upon his judgment against Joseph Abrams; that the trustee has received an offer of compromise and settlement of said judgment and

claim against Joseph Abrams and Richland Securities, Inc.; that in view of the trustee's lack of funds to finance further extensive litigation and doubt as to whether such litigation would reveal assets which could be applied against said judgment and under all the other circumstances present it appears to the court that it would be to the best interests of the estate to accept said offer of settlement; and that accordingly the court finds that such settlement should be authorized and approved and the trustee directed to proceed therewith upon the terms and conditions hereinafter set forth."

In appealing, the Stockholders' Committee and the Unsecured Creditors' Committee claim:

(a) The court abused its discretion in disregarding the views of the creditors and the merits of the controversy and basing its judgment wholly upon the difficulties attending the pending litigation;

(b) The court's order is not substantiated by the record;

(c) There are not sufficient facts in the record to inform the court of what effect compromise may have on the Schindler claim.

The Securities and Exchange Commission, which was a party to the reorganization in the District Court pursuant to § 208 of Chapter X of the Bankruptcy Act (11 U.S.C.A. § 608) and as such is an appellee on this appeal, nevertheless opposed the settlement below and has filed its brief here in support of the appellants. On appeal, it claimed:

"I. The record was insufficient to permit the court below to direct the proffered settlement.

"II. In view of the substantial effect of the ultimate distribution on creditors and stockholders of the proposed settlement, there was insufficient notice of the hearing thereon."

With reference to the right of compromise, 11 U.S.C.A. § 50 provides:

**"§ 50.   Compromises**

"The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

Here the trustee was silent insofar as the Abrams compromise was concerned, merely stating, in his verified report to the court asking instructions, that he had come to no "conclusion as to whether the proffered settlement should be accepted", and at the hearing he expressed no opinion.

The main problem with which we are here concerned, then, is whether or not the District Court abused its discretion in ordering the Abrams settlement on the basis of statements of counsel and inconclusive responses to the court's questions at the hearing on September 2, 1960.   See Upson v. Otis, 2 Cir., 1946, 155 F.2d 606, 614; Drexel v. Loomis, 8 Cir., 1929, 35 F.2d 800, 807.   In In re Kansas City Journal-Post Co., 8 Cir., 1944, 144 F.2d 816, 817, Judge Johnsen, speaking for this court, stated:

"Where creditors have not been denied or improperly deprived of the opportunity to exercise any of these rights, and the compromise has been approved, such a discretionary approval will not be set aside on appeal, unless the record clearly demonstrates that the court otherwise has acted arbitrarily or that the compromise itself actually is not for the best interest of the estate * * * ."

We said in Drexel v. Loomis, supra, 35 F.2d at page 806:

"In determining the advisability of accepting an offer of compromise, many considerations are addressed to the sound discretion of the referee and chancellor, among them: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

While in the foregoing cases the actions of the District Court in approving compromises were affirmed, Courts of Appeals nevertheless have had no hesitancy to reverse or remand for further consideration orders approving compromise where such orders were found to be an abuse of discretion, or based upon insufficient investigation or information, or not in the best interests of the creditors and stockholders.   See Upson v. Otis, supra;   Conway v. Silesian-American Corp., 2 Cir., 1950, 186 F.2d 201, 202–203, 214; In re Chicago Rapid Transit Co., 7 Cir., 1952, 196 F.2d 484, 491.

Considering first the probability of success in connection with the Abrams judgment presently on appeal in the Second Circuit, the record here indicates that Mr. Steele, counsel for the trustee, stated at the hearing:

"However, it is true that the judgment we do have is on appeal and there is always a chance on appeal that a judgment will be reversed, as everyone knows."

In his application for instructions, the trustee reported:

" * * * that on said appeal appellants assign numerous errors on the part of the trial court in rulings on evidence and entry of judgment on inconsistent counts of the complaint and the questions raised by the appeal are substantial and not entirely frivolous, so that the outcome is to some extent in question, although the trustee's New York counsel are of the opinion that the judgment will be affirmed."

Mr. Kissel, the New York counsel who obtained the judgment in the District Court and was preparing to defend it on the appeal, stated:

" * * * We think that the judgment is valid and that the grounds for the appeal are invalid."

If the judgment should be sustained, however, the difficulties would not be at an end and very substantially there appears the problem of collection. In considering Abrams' other liabilities, including very large amounts apparently owed for income tax, etc., it was pointed out by the creditors' attorney and the Securities and Exchange Commission:

" * * * that $154,000 of said judgment are trust funds in Abrams' hands to which the government can lay no claim."

And by Mr. Kissel:

" * * * we have the judgment on fraud and conversion and unjust enrichment so it could not be barred by a discharge in bankruptcy."

Mr. Steele, in his statement to the court, referred to Abrams as

" * * * a man of apparent substance, but as many such persons are, with few assets that can be located and seized. He has a home which is very impressive, I understand, to see out in Long Island. We had an informal appraisal made of it. It was appraised at $74,000. Title to that home is held by him and his wife as tenants by the entireties, which, I am informed, means that whichever one is the first to die, loses all interest in the property and the survivor takes it all. It's different from our law in that it could not be severed, at least without action of the principals, so the result is that while we have a judgment against Abrams and might seize his interest in the home, what we would obtain would be something less than the one-half interest, because if he predeceased his wife, it would terminate.

"Now, I don't know exactly what happens if the whole property is sold and our judgment applies, but at any rate, we are not in too satisfactory a situation there in attempting to levy on his interest and sell it because we have something, then, that is not too saleable. But we do have that much."

Mr. Kissel, New York counsel for the trustee, stated:

"Nonetheless, the main problem on this case, though, is to collect money from a person who, even though he has it, is able to secrete the funds. We believe that his funds are handled by his uncle, this man Charles Gordon, and we have attempted to examine him. As Mr. Steele said, this met with the plea of the Fifth Amendment by Mr. Abrams and that required briefing, hearings before the Court and resulted in the Court overruling the plea of the Fifth Amendment, and immediately, then, Mr. Abrams went to the Court of Appeals to get a stay of that and that meant an argument on that motion, and that motion was denied, and it then went back to the District Court, and *the orders are there for the production of Mr. Abrams to be examined, and the same procedure was followed with Mr. Gordon.*

"*We have not, as yet, examined either Mr. Gordon or Mr. Abrams.* We have examined his wife, Abrams' wife.

"So in summary there, the problem is finding the assets, which Abrams has always, before this judgment, informed us existed, and even at the time he pleaded guilty to the tax indictment, the Court there noted some affidavit that had been submitted by other persons that he was a man of wealth and large business interests and for that reason should have additional time to straighten out his affairs, and various other persons, who formerly were connected with him but now have drifted away from him, have furnished us with information which leads us to believe that he does have assets. But he has withdrawn them from the various places where they were available.

"One, however, are the trusts for his daughters, which seemed to be operated by persons for Mr. Abrams'

benefit. At least, the funds are placed in Mr. Abrams' business interests and it may very well be that those are unavailable to attack, and they have substantial interests in them." (Emphasis supplied.)

Why the trustee has not proceeded with the examination of Abrams and Gordon does not at all appear clear. The Fifth Amendment plea was rejected by the District Court and a motion to the Court of Appeals for a stay was denied. Certainly those examinations were called for in any kind of an investigation as to Abrams' ability to pay. The size of Abrams' offer is too substantial to suggest that he is without means, yet without further information it is seemingly too small to be a fair compromise of a judgment in excess of one-half million dollars, where $154,000 thereof represented trust funds.

■ With regard to Abrams' house, the trustee and his counsel were unable to inform the court "exactly what happens if the whole property is sold" pursuant to a levy on the judgment against Abrams. It should be remembered here that Abrams' wife, owner of the house with him, is a defendant in the short swing profits action.

In connection with the proposed covenant not to sue and dismissal as to Abrams and Richland Securities, Inc., the Creditors' Committee, the Stockholders' Committee and the Securities and Exchange Commission point out that a serious question was presented in view of the fact that the cause of action was dependent upon ownership of 10% of the corporation's stock by the syndicate to which Abrams and Richland Securities, Inc., were parties. Since Abrams and Schindler were not officers they could not be sued on that basis. § 16(b) of the Securities Exchange Act, 15 U.S.C.A. § 78p. Jurisdiction to sue was dependent upon the beneficial ownership of more than 10% of the debtor's stock. By definition "person" includes an "association", § 3(a) (9) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78c(a) (9). No careful consideration was given to whether an action would lie against only one member of the association, that is, Schindler, after a covenant not to sue had been given to another member, Abrams, without whose holdings there would not be 10%. Counsel for the Securities and Exchange Commission pointed this out to the court. The court thereupon made inquiry from the trustee's New York counsel, who replied:

"Your Honor, *I haven't examined into it because we didn't know really whether or not the proposed offer of settlement was going to be of any further interest or not so we didn't do any legal work on it,* but based upon my general knowledge * * " (Emphasis supplied.)

counsel assumed that a covenant not to sue would not affect the trustee's claim against Schindler

" * * * without having looked into it in the 16B case * * *."

Here is a suit to recover approximately a million dollars against persons, some of whom are allegedly able to respond in the event judgment is obtained against them. A substantial question appears in the case as to whether the covenant not to sue, if executed as to Abrams, might not release Abrams' co-defendants and yet it had not been examined into or considered so that an informed opinion might be given to the court in arriving at its conclusions. We believe the court to have been inadequately informed as to the difficulties and complexities to be encountered in the matter of collection and as to the effect of the covenant not to sue.

The probabilities of ultimate success in the Abrams litigation, the complexity of the litigation, the difficulties of collection, the expense, inconvenience and delay attending it, the effect of the proposed covenant not to sue on the short swing profits action, the possibility of proceeding with the remaining litigation and collections on contingent fee bases in view of the over-distribution of assets which resulted in the estate being "stranded for administration expenses", the para-

mount interest of the creditors and the stockholders all require careful and full consideration before an informed and independent judgment could be made as to the advisability of accepting the proposed settlement. With the paucity of information furnished to the court by the trustee and his counsel, we do not see how that judgment could be properly exercised.

■ The Securities and Exchange Commission asserted forcefully below and with equal vigor here that there was error "of stopping short of the final stage of investigation, that of discovering whether there were assets with which to satisfy the judgment" and that there were too many questions left unanswered for the court to arrive at that "informed and independent judgment" referred to by Mr. Justice Brandeis in National Surety Co. v. Coriell, 1933, 289 U.S. 426, 436, 53 S.Ct. 678, 681, 77 L.Ed. 1300. The recommendations of the Securities and Exchange Commission are, of course, not binding. They should, nevertheless, be given substantial consideration and in this instance we believe that their recommendations were sound and should have been followed. See Conway v. Silesian-American Corp., supra, 7 Cir., 1950, 186 F.2d 201, 202–203. Additionally, it may be pointed out that most of those who bear the risk wanted further investigation.

We do not in this opinion attempt to pass upon the merits of accepting or rejecting the Abrams offer and we recognize the desirability of compromise as opposed to lengthy and uncertain litigation. What we do say, however, is that the court was not furnished with sufficient information to make an informed judgment. We accordingly set aside the order complained of and remand the case to the District Court for further proceedings as indicated in but not limited by this opinion, including consideration of the effect of the judgment against the Bankers Life and Casualty Company of which the court had no notice at the time it entered the order herein set aside. After such further proceedings and when the court has been fully informed and has been assisted by the recommendations of its trustee, it may properly determine whether or not the offer of settlement should be accepted.