JOHN R. BROWN, Circuit Judge:
 

 Here we review the District Court’s approval of another compromise involving Jackson Brewing Company. While in the companion case of
 
 Rivercity v. Herpel (In re Jackson Brewing Co.),
 
 624 F.2d 599 (5th Cir. 1980), we reviewed the approval of a compromise between the Trustee and American Can (and other creditors) with objections raised by Rivercity, this time we examine a compromise between the Trustee and Rivercity with objections raised by American Can (and other creditors). Like its crony, also decided this day, we affirm.
 

 I.
 

 Jackson Brewing Company (“Jax”) was placed in Chapter X reorganization in 1974 on the petition of several of its creditors. Jax’s Trustee brought several plenary law suits on behalf of Jax against members of the Rivercity and French Eighth partnerships and against Prudential Insurance Company. Rivercity and French Eighth had identical partners, namely Thomas C. Farrell, Jr., Paul A. Nalty, Margaret A. Perez Barton, and JBC. JBC was owned by James W. Howard, a Chicago promoter, who had acquired all of Jax’s stock in 1970 and had immediately commenced depletion of its dowery.
 

 The most important of these suits sought recovery of possession of property sold to French Eighth in 1971 for approximately $451,000, a price apparently well below market value. Two checks totaling that amount were issued. The first check, drawn by French Eighth to the order of Jax for approximately $270,000, was deposited in a Jax checking account. This amount was simultaneously paid out to JBC for which a non-interest bearing note executed by JBC in favor of Jax was given. The second check was drawn by JBC for over $181,000 to French Eighth endorsed without recourse by French Eighth to Jax and then endorsed by Jax to JBC. It was never deposited in a bank. A note for this amount was also executed by JBC in favor of Jax. One and a half years later (on June
 
 *607
 
 27, 1972) these debts owed to Jax were “paid” when considered part of the $14,000,-000 dividend declared by Jax to its stockholder, JBC. This sale was contested by the Trustee until the compromise and remains under attack by American Can and other creditors involved in this appeal.
 

 The compromise involved dismissal of all plenary law suits brought by the Trustee against several companies, individuals and one law firm
 
 [1]
 
 in return for the receipt of a total of $445,000 in cash and securities. Also Rivercity would withdraw its proof of claim for over $3,500,000 and Prudential Insurance Company would provide certain funds. The creditors
 
 [2]
 
 objected in the District Court, as here, to three primary elements of the compromise: (1) the dismissal of French Eighth in the law suits for only $175,000, (2) the dismissal of certain individual and corporate defendants without consideration, and (3) the withdrawal by Riv-ercity of its proof of claim without payment of any administrative costs. Although only these three elements of the compromise were opposed, at least two of the creditors
 
 [3]
 
 refused to sever these elements from the rest of the compromise, rejecting the rest of the compromise if any changes were made. The District Court approved the compromise in its entirety, detailing its reasons in a 33 page opinion,
 
 In re Jackson Brewing Co.,
 
 No. 74-1840 (E.D. La. Sept. 18, 1978),
 
 motion to amend opinion and order denied, In re Jackson Brewing Co.,
 
 No. 74-1840 (E.D. La. Oct. 2,1978),
 
 motion for new trial and/or amendment denied, In re Jackson Brewing Co.,
 
 No. 74-1840 (E.D. La. Nov. 15, 1978),
 
 [4]
 
 engendering several creditors to appeal.
 
 [5]
 

 II.
 

 As we explained in
 
 Rivercity v. Herpel (In re Jackson Brewing Co.),
 
 624 F.2d 599 (5th Cir. 1980), § 27 of the Bankruptcy Act, in conjunction with § 187, authorize the Trustee, with the approval of the District Court, to compromise claims arising in the administration of an estate in Chapter X reorganizations. 11 U.S.C.A. §§ 50, 587; 6 Part 2 Collier On Bankruptcy ¶ 8.07 (14th ed. 1978);
 
 Daniel Hamm Drayage Co. v. Willson,
 
 178 F.2d 633 (8th Cir. 1949). The District Court must review the particular facts and circumstances with adequate detail and explanation to determine:
 

 (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
 

 (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
 

 (3) All other factors bearing on the wisdom of the compromise.
 

 Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson ("TMT Trailer”),
 
 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 9-10 (1968). See also
 
 American Employers' Insurance Co. v. King Resources Co.,
 
 556 F.2d 471 (10th Cir. 1977) (detailing a 10 factor test employed by the Court);
 
 Drexel v. Loomis,
 
 35 F.2d 800, 806 (8th Cir. 1929) (articulating the factors as “(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of litigation involved, and the expense, incon
 
 *608
 
 venience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.”);
 
 Ashbach v. Kirtley,
 
 289 F.2d 159 (8th Cir. 1961) (following the factors in
 
 Drexel v. Loomis);
 
 2A Collier on Bankruptcy ¶ 27.04 (14th ed. 1978).
 

 Then, on appeal an appellate court, keeping in mind that compromises are accepted,
 
 Case v. Los Angeles Lumber Products Co.,
 
 308 U.S. 106, 130, 60 S.Ct. 1, 14, 84 L.Ed. 110, 128 (1939);
 
 TMT Trailer,
 
 390 U.S. at 424, 88 S.Ct. at 1163, 20 L.Ed.2d at 9, and may be beneficial,
 
 Florida Trailer and Equipment Co. v. Deal,
 
 284 F.2d 567, 571 (5th Cir. 1960), must ensure that the compromise is fair, equitable and in the best interest of the estate,
 
 TMT Trailer,
 
 390 U.S. at 424, 88 S.Ct. at 1163, 20 L.Ed.2d at 9. The Supreme Court has explained that review on appeal must be grounded in clear support in the record, coupled with sound analysis by the District Court. As the Court has explained, “it is essential . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.”
 
 TMT Trailer,
 
 390 U.S. at 434, 88 S.Ct. at 1168, 20 L.Ed.2d at 15. In
 
 TMT Trailer,
 
 the District Court and this Court had approved a compromise as part of a plan of reorganization. The Supreme Court reversed on the ground that the record did not adequately demonstrate the factual or legal factors involved:
 

 Here there is no explanation of how the strengths and weaknesses of the debtor’s causes of action were evaluated or upon what grounds it was concluded that a settlement which allowed the creditor’s claims in major part was ‘fair and equitable.’ Although we are told that the alternative to settlement was ‘extensive litigation at heavy expense’ and ‘unnecessary delay,’ there is no evidence that this conclusion was based upon an educated estimate of the complexity, expense, and likely duration of the litigation. Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation.
 

 * * * * * *
 

 The record before us leaves us completely uninformed as to whether the trial court ever evaluated the merits of the causes of actions held by the debtor, the prospects and problems of litigating those claims, or the fairness of the terms of compromise. More than this, the record is devoid of facts which would have permitted a reasoned judgment that the claims of action should be settled in this fashion.
 

 390 U.S. at 434, 440-41, 88 S.Ct. at 1171, 1172, 20 L.Ed.2d at 15, 18. With these instructions, on remand the District Court assigned the ease to a special master who held hearings resulting in 4,000 pages of testimony and several hundred exhibits. The Court then approved the compromise and we affirmed.
 
 TMT Trailer Ferry, Inc. v. Kirkland,
 
 471 F.2d 10 (5th Cir. 1972). Hence, there must be a substantial factual basis for the approval of a compromise, but when there is such a basis with articulate findings and conclusions, an appellate court may not reverse absent some other abuse by the District Court of its discretion. See
 
 Florida Trailer and Equipment Co. v. Deal,
 
 284 F.2d at 571;
 
 Ashbach v. Kirtley,
 
 289 F.2d 159 (8th Cir. 1961);
 
 Daniel Hamm Drayage Co. v. Willson,
 
 178 F.2d at 635-36;
 
 Fernow v. Gubser,
 
 136 F.2d 971, 972 (10th Cir. 1943);
 
 Hair v. Byars, (In re Summerville Cotton Mills),
 
 92 F.2d 684 (5th Cir. 1937). See also
 
 Jones Financial Corp. v. Ray (In re Atlas Sewing Centers, Inc.),
 
 384 F.2d 66, 83 (5th Cir. 1967). And, the District Court may not be reversed as to any finding of fact unless it is unsupported by the record, or clearly erroneous, F.R.Civ.P. 52;
 
 Benjamin v. Diamond (In re Mobile Steel Co.),
 
 563 F.2d 692, 704 (5th Cir. 1977);
 
 Katz v. Weil (In re Garfinkle),
 
 577 F.2d 906, 909 (5th Cir. 1978).
 

 
 *609
 
 III.
 

 The application of the abuse of discretion standard, as informed by
 
 TMT Trailer,
 
 is the primary area of dispute on appeal. American Can contends that, like
 
 TMT Trailer,
 
 the District Court in this case failed to provide an adequate factual and legal basis for its result. Specifically, American Can repeats its three objections to the compromise and contends that, as to all three, the District Court failed to evaluate sufficiently the four critical considerations for approval of a compromise, derived from
 
 Drexel v. Loomis,
 
 supra:
 

 (1) The probability of success;
 

 (2) The difficulties of collecting;
 

 (3) The complexity
 
 of the
 
 litigation involved and expense, inconvenience and delay; and
 

 (4) The paramount interest of the creditors.
 

 After reviewing the cases, 576 pages of transcript (regarding a comprehensive hearing from June 28 through June 30,1978, an additional hearing on July 12,1978 at which more evidence and oral arguments were heard, and further argument on November 15, 1978 for motions to amend the judgment and/or for a new trial), numerous other depositions and documents with which the District Court was fully familiar from the time of the filing of the reorganization petition on November 22, 1974 through 582 docket entries and at least 14 formal in-court hearings before the District Judge until the date of the issuance of the opinion, and the 33 page opinion issued by the District Court, we disagree.
 

 At the outset we stress that neither
 
 TMT Trailer
 
 nor the other authorities mandate the District Court to parrot any particular language. While we do not discourage a District Court from utilizing the language suggested in
 
 TMT Trailer
 
 or
 
 Drexel v. Loomis,
 
 we see no reason to mandate the very same words that they use. Indeed, to do so would likely contract or destroy the avenues of communications which ever lead us to the uncharted, the creative and the adaptive destinations in the law. This we decline to do.
 

 Moreover, under our own version of the proper approach for a District Court — a consideration of (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise— we find ample support in the record and sufficient analysis by the District Court to satisfy us that the essence of
 
 TMT Trailer
 
 has been scrupulously followed.
 

 American Can first challenges the dismissal of the suits to recover the French Eighth property. American Can alleges that the evidence in the record justifies the suit on the Louisiana principle of lesion beyond moiety.
 

 Under Louisiana law, lesion beyond moiety provides for the recovery of property where it is proven that the price paid is less than one half its value.
 
 [6]
 
 American Can reviews the evidence presented by the different appraisers, which range from $689,-000 to $1,370,200, but concludes that the four-pronged test of
 
 Drexel v. Loomis
 
 is not met. We disagree. The District Court heard testimony from no less than five appraisers. American Can attempts to negate the testimony regarding the lower estimates, arguing they contain “weaknesses,” “short cuts,” and improper procedures. However, the testimony indicates the precise methods used to determine the value of the property, including the bases for dis
 
 *610
 
 counting certain figures through lease disadvantages and the large size of the land. American Can would have us reject this testimony entirely, selecting their view of the evidence over all others and essentially refinding the facts. While we must be sure the record speaks fairly for the position of the District Court, we should not and cannot assume its factfinding role.
 

 After a full discussion of the different estimates the Court concluded that there was a substantial controversy between the Trustee and the French Eighth with an uncertain resolution. Obviously the Court expressly found that probabilities of success of the lawsuit were indefinite (there was also testimony by the Trustee that the chances of success were approximately 50%), the litigation complex, presumably expensive, inconvenient, protracted, and injurious to at least some of the creditors. At least implicitly, the collection of a large sum under a lesion by moiety suit would be difficult. While, as American Can suggests, a lesion suit may be “relatively simple,” it is also clear that the District Court had before it sufficient testimony on disparate valuations of the property, carefully analyzed their applications to the proposed compromise, and concluded, as it properly could, that the outcome was indefinite enough to weigh toward compromise.
 

 American Can also alleges that the District Court erroneously assumed that the Trustee had to prove twice the $451,000 recited consideration in the lesion suit. Rather, American Can says that the correct sum was only $269,000, constituting the check from French Eighth to Jax, since the check for $181,000 was never “paid” to Jax, but was refunneled back to JBC. American Can along with the other appellants
 
 [7]
 
 also claim that the District Court failed to consider adequately the import of
 
 Sliman
 
 v.
 
 McBee,
 
 311 So.2d 248 (La.1975) (vendor entitled under Louisiana law to sue for a dissolution of sale of real property where purchase price, part cash and part note, was not fully paid).
 

 The District Court discussed these arguments in its opinion and again found their resolution to be uncertain. Although appellants claim that their views are the correct ones, it is at least arguable that substantial defenses were still available to novel legal questions (i. e., the subsequent declaration of a dividend, extinguishing the obligation from JBC to Jax). As the District Court explained, appellants did not refer the Court to any case in point, nor did the Court uncover any such case in its own research. Given this record and discussion by the District Court, we find no abuse of discretion in the District Court’s approval of the compromise regarding the dismissal of the lawsuit against French Eighth. See
 
 Florida Trailer and Equipment Co. v. Deal,
 
 284 F.2d at 572-73 in which we affirmed the District Court’s approval of a compromise, particularly when confronting novel legal issues, even conceding that after trial a creditor might likely win. As we explained in that case:
 

 There it ends. And there it must end unless, as cannot possibly be the case, any objecting creditor is empowered to frustrate the Congressional policy encouraging compromises by the trustees merely by showing on the hearing for approval that if the claim thus released were properly asserted, the estate would likely win.
 

 Id.
 
 at 574. Although we do not suggest in any way that compromises or finality are to be extolled above all else, we decline to rewrite the record for the District Court.
 

 Next American Can argues that the dismissal of the Trustee’s suits against certain directors was also improper. Again the District Court discussed the issue, including the meaning of
 
 Noe v. Roussel,
 
 310 So.2d 806 (La.1975) and
 
 Pepper v. Litton,
 
 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed.2d 281 (1939), evaluated the merits, and found the outcome uncertain. The Court specifically explained there was no case in point. Moreover, and perhaps most importantly, the Court recognized the very substantial defense of prescription under La.Rev.Stat.
 
 *611
 
 Ann. 12:92D.
 
 [8]
 
 While American Can asserts this is merely a “technical” defense, and so presumably reduced in importance, we refuse to invalidate, on a cry of technicality, a well established and wholly proper defense such as prescription under Louisiana law. See
 
 American Pipe and Construction Co. v. Utah,
 
 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713, 727 (1974) (“[Statutory limitation periods are ‘designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.’ ”) Moreover, there is evidence in the record regarding the breach of fiduciary duty suit that (1) the probability of success was not high (e. g., testimony by the Trustee that there was 50% chance of winning), (2) the possibility of collection was unclear (e. g., testimony by the Trustee that there was no possibility of collecting from JBC the $14,-000,000 sought), (3) the litigation was complex (e. g., District Court op. pp. 15-24), and presumably would involve expense and delay, and (4) some of the defendants were also partners in French Eighth which was already contributing $175,000 to the compromise. With a sufficient basis in fact, record and rationale, we agree with the District Court.
 

 Further, American Can challenges the withdrawal of Riyercity’s proof of claim without payment of administrative expenses. The Trustee specifically testified that the withdrawal of this claim was an important factor he took into consideration in the compromise. Also, the District Court considered the large amount of Rivercity’s proof of claim and the deleterious effect a successful prosecution of it would have on the creditors of the estate. Moreover, as we have already observed, Rivercity was composed of the same partners as French Eighth, which already was to contribute $175,000 to the compromise. And, it is at least arguable that any administrative cost that may have been incurred between April 1977, the time of the filing of the proof of claim, and June 1978, the date of the compromise, would be minimal. The District’s Court approval of the withdrawal of River-city’s proof of claim without administrative cost payment was not an abuse of discretion.
 

 Finally, American Can argues that the District Court should not have relied on the fact that the compromise agreement was not severable. While the Court does discuss the non-severability, it is not a primary, controlling feature but only one factor which the Court mentions in concluding. Moreover, given the common nature of compromises, the District Court may very well be entitled to consider this in its analysis. According to Prudential Insurance Co., some or all of the defendants not dismissed from the suit may choose to bring the insurance company or any other dismissed defendant back into the lawsuit as a third party. In that event, additional monies would be needed for a third party action and the compromise would be less attractive to at least some of the participants. Indeed, the Court’s candor in its consideration of the non-severability of the compromise buttresses the solid and clear reasoning of the Court. If the Court had not been quite so articulate in its portrait of this aspect of the compromise, it may not have
 
 *612
 
 been so easy for American Can to formulate this basis for its appeal.
 
 [9]
 

 The evidence on this issue and others before the District Court was thorough and comprehensive. Clearly the Court was familiar with the entire record, touched all material bases of the objections of the creditors, and held directly, expressly or by necessary implication on every substantial point of contention. The District Court properly satisfied the requirements of
 
 TMT Trailers
 
 and the case law in this Circuit. The Court’s approval of the arrangement constitutes not an abuse of discretion, but an uncompromising examination and approval of this carefully constructed compromise.
 

 As did the District Judge, we hope this brings an end to this never ending controversy.
 

 AFFIRMED.
 

 [1]
 

 . The defendants included French Eighth, JBC, Inc., Levee Street Corp., Prudential Insurance Co., Rivercity, Samaan Ltd., Union Bank of California, A. Sheridan Atkinson, Margaret A. Perez Barton, Thomas C. Farrell, Jr., James W. Howard, C. Paul Johnson, James B. Modrall, Paul A. Nalty, Ben D. Sisson, Frank F. Zitzman, and Foley & Lardner.
 

 [2]
 

 . The creditors, now appellants in this Court, were American Can, Federal Paper Board Co., American Flange & Manufacturing Co., Continental Lithographers, Inc., Kerr Glass Manufacturing Corp. and Chattanooga Glass Co.
 

 [3]
 

 . Both Prudential Life Insurance Co. and Continental Casualty Co. opposed severance of the compromise.
 

 [4]
 

 . As in
 
 Rivercity v. Herpel (In re Jackson Brewing Co.),
 
 624 F.2d 599 (5th Cir. 1980), we direct the Clerk of this Court to retain available for examination, copying and reproduction, these detailed opinions.
 

 [5]
 

 . Appellants are listed
 
 supra
 
 note 2. Appellees are Trustee William W. Herpel, French Eighth, Prudential Insurance Co., Rivercity, Thomas C. Farrell, Jr. and Paul A. Nalty.
 

 [6]
 

 . In Louisiana lesion is defined as:
 

 the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.
 

 La.Civ.Code Ann. art. 1860 (West), while article 1861 provides:
 

 2. In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser.
 

 [7]
 

 . The appellants are listed
 
 supra,
 
 note 2.
 

 [8]
 

 . La.Rev.Stat.Ann. 12:92D provides:
 

 D. If any dividend shall be paid in violation of this Chapter, or if any other unlawful distribution, payment or return of assets be made to the shareholders, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution. An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.
 

 [9]
 

 . To encourage our affirmance appellees (listed
 
 supra,
 
 note 5) contend also that, under
 
 Bangor Punta Operations Inc. v. Bangor & Aroostook R. R.,
 
 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1978), the Trustee lacks standing to assert its claim for creditors on behalf of Jax or American Can. Due to the manner in which we dispose of this case we do not address this question.