344 F.2d 835
 James B. AUNE, Robert E. Stamm, Sr., George Bettemiller, M.D., Virginia K. Moras, Hazel E. George and Karl S. Moras, Appellants,
v.
Eugene R. REYNDERS, Receiver of Shawano Development Corporation, a corporation, debtor, Foremost Research Foundation, Inc., and Securities and Exchange Commission, Appellees.
 No. 7699.
 No. 7956.
 United States Court of Appeals Tenth Circuit.
 April 27, 1965.
 
 Karl S. Moras, Waukegan, Ill., pro se, and for other appellants.
 No appearance for Eugene R. Reynders, receiver.
 Wayne K. Ramsay, Jacksonville, Fla. (Henderson, Godfrey, Kline & Uchner, Cheyenne, Wyo., and Milam, Ramsay & Martin, Jacksonville, Fla., on the brief), for appellee Foremost Research Foundation, Inc.
 David Ferber, Solicitor, Securities and Exchange Commission (Philip A. Loomis, Jr., General Counsel, Thomas B. Hart, Regional Administrator, Richard M. Phillips, Special Counsel, Robert W. Cox, Attorney, and William D. Scheid, Attorney, Securities and Exchange Commission, on the brief), for appellee Securities and Exchange Commission.
 Before PICKETT and BREITENSTEIN, Circuit Judges, and CHRISTENSEN, District Judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 These consolidated appeals relate to the same bankruptcy proceedings and attack orders of the district court rejecting a Chapter X plan of reorganization and adjudicating bankruptcy.
 
 
 2
 On April 3, 1959, Shawano Development Corporation, a Florida corporation, filed in the United States District Court for the District of Wyoming a debtor's petition for reorganization under Chapter X of the Bankruptcy Act.[1] The petition stated the assets of Shawano to be approximately $4,000,000. A trustee was appointed.[2] He found the assets to be $5,000 advanced by the president of Shawano, 920 acres of encumbered Florida farm land, and 200 unpatented mining claims in Wyoming. On the liability side were "scores of creditors, secured and unsecured" and 18,000 shareholders. The total amount of claims was never determined but approximated $450,000.
 
 
 3
 The Trustee promptly investigated the finances and operations of Shawano. The Florida land was sold and produced a net of $13,735 for the estate. The mining claims were not being operated. Because they were unpatented, development work was necessary to the retention of title. Under federal and Wyoming law the cost of such work was estimated to be about $20,000 annually.
 
 
 4
 Late in 1959, the Trustee proposed a plan of reorganization which provided for the operation of the mining property subject to a "net profit interest" of the debtor. This plan required approval by the Atomic Energy Commission and that approval was never obtained. In October, 1960, the court authorized an agreement for the mining of the claims by Sigma Mining Company with the payment of royalty to the Trustee. From then to July, 1963, the claims produced a gross revenue to the Trustee of about $150,000. In a petition of the Trustee, dated January 23, 1963, for instructions he stated that the value of the claims "does not exceed $150,000 and * * * may be considerably less." In a June 21, 1963, report filed with the court the Trustee stated that the Sigma agreement had been terminated, that no further mining had been done because no new ore bodies had been defined, and that Sigma would not operate further under the agreement with the Trustee. A new contract with Sigma at a reduced royalty rate was approved on July 2, 1963. Gross receipts from that date through July 31, 1964, approximated $33,000 out of which royalties of $9,700 had to be paid. The record does not show what future return to the debtor from the mining operations may be expected.
 
 
 5
 Shawano was incorporated in 1951. From then to the date of the Chapter X petition, Shawano engaged in a series of corporate mergers, exchanges of property and stock transactions to the benefit of its officers and others and to the loss of the company. The report of the Trustee estimated that stock of a market value of $16,539,000 was issued and said that it was doubtful if the assets received by Shawano had a value of even $2,271,000. No good purpose would be served by a resume of the complicated manipulations. It is enough to say that Shawano and its shareholders were always on the losing end.
 
 
 6
 The Trustee recommended that various suits be brought in Florida and New York against officers, former officers and others to recover something for the Shawano creditors and stockholders. In his January 23, 1963, report, the Trustee estimated the cost of such litigation to be more than $60,000. Various persons were indicted in the United States District Court for the Southern District of New York for offenses growing out of the Shawano operations. Pursuant to court authorization, suit was instituted in Florida against a number of individuals and companies. The amount claimed was about $3,000,000. One of the defendants is Foremost Research Foundation, an appellee in each of these appeals.
 
 
 7
 On April 18, 1963, the court reviewed the Chapter X proceedings and ordered that unless a feasible plan for reorganization was submitted, the court would require cause to be shown as to why Shawano should not be adjudicated a bankrupt. The Trustee then submitted a plan which stated "this is a liquidating plan and no continuity of corporate operation is contemplated at present." The plan proposed the sale of the mining claims or, if a fair sale could not be made, the negotiation of a mining contract to assure the annual assessment work required by federal and state law. The Trustee was to "prosecute all claims for relief and choses in action belonging to the debtor * * * where it appears reasonably probable that such action * * * is for the best interests of the estate of the debtor." Upon the confirmation of the plan the Trustee was to pay in full the holders of trustee's certificates and one-third of the secured claims. The balance of the secured claims was to be paid from the recoveries in the litigation.
 
 
 8
 On August 12, 1963, the court ordered that a hearing be held on the proposed plan; that the Trustee should notify the debtors, creditors, stockholders, Secretary of the Treasury, and the Securities and Exchange Commission; and that if the Court determines that the reorganization plan is not fair and feasible, it will "dismiss the proceedings or adjudicate the debtor bankrupt." On October 7, 1963, the Trustee paid $114,420 into the registry of the court.[3]
 
 
 9
 A hearing was held on September 30, 1963, and a number of creditors objected to the plan. The Commission and six stockholders supported the plan. In the course of the proceedings the attorney for the Trustee offered an oral amendment to the plan whereby three unnamed secured creditors[4] were to be paid the full amount of principal claimed and the court would grant 60 days in which stockholder interests could raise money to finance the pending and proposed litigation. On October 11, 1963, the court made findings of fact and conclusions of law.
 
 
 10
 The court found that the notice required by law had been given and held:
 
 
 11
 "That the proposed plan of reorganization of the Trustee is not fair, equitable or feasible and should be and is hereby disapproved."
 
 
 12
 The court allowed trustees' and attorneys' fees and expenses in the amount of $19,500, approved secured claims in the amount of $92,348, and determined the preferred tax claims to be approximately $10,900. The total of these amounts exceeded the sum which the Trustee had paid into the registry of the court. In its judgment entered on the same day the court ordered distribution to the trustees, attorneys and secured creditors. The court also ordered that:
 
 
 13
 "the Court retain jurisdiction of the matter for the purpose of distributing any other monies that may come into the hands of this court, and for the ultimate purpose of either dismissing the proceedings in reorganization or adjudicating the debtor corporation a bankrupt. On or before November 8, 1963, the Court will make final disposition of these proceedings by either dismissing the proceedings or by adjudicating the debtor a bankrupt, * * *."
 
 
 14
 No appeal was taken from the October 11 order. On November 8 the court adjudged Shawano to be a bankrupt.
 
 
 15
 The six Shawano stockholders who supported the plan filed, on December 16, 1963, a notice of appeal from the November 8, 1963, order.[5] They designated the Receiver as appellee but he has presented neither brief nor argument. The Securities and Exchange Commission was a party to the district court proceedings pursuant to 11 U.S.C. § 608. That section provides that the Commission may not appeal. The Commission has filed briefs and made arguments in this court on the theory that it is an appellee. In so doing it has aligned itself with the appellants.[6] The only resistance to the appeals comes from Foremost Research Foundation which is an unsecured creditor with a claim of about $31,000. The Trustee in the Chapter X proceedings filed a counterclaim against Foremost in the amount of about $1,125,000. Foremost is a defendant in the Florida litigation brought by the Trustee. No party challenges the right of any other party to participate in the appellate proceedings. In the circumstances we shall accept the situation with the comment that the entire history of Shawano is obscured by a cloud of mystery.
 
 
 16
 Foremost has moved to dismiss and to strike the appeal in No. 7699 because it is untimely. The governing section of the Bankruptcy Act[7] provides that appeals under the Act shall be taken within 30 days after written notice to the aggrieved party of the order complained of and, if such notice is not served, within 40 days of the entry of the order. In this case written notice was not given and the appeal filed on December 16, 1963, is within 40 days of the order of November 8, 1963. The motions are without merit as is also the motion of Foremost to strike the briefs of the appellants and of the Commission.
 
 
 17
 The November 8 order was not concerned with the plan for reorganization but rather with the adjudication of the debtor as a bankrupt. The contentions of the stockholders and the Commission that on November 8 a fair and feasible plan was before the court are not sustained by the record. The plan was expressly rejected on October 11. The appellants and the Commission are now trying to attack the October 11 order under the guise of an appeal from the November 8 order from which a timely appeal was taken. This they may not do. The earlier order was final and not subject to review when the notice of appeal was filed.[8]
 
 
 18
 In the period between October 11 and November 8 no other or alternate plan was proposed and no request was made for additional time within which to submit a new plan. In the circumstances the court was required to act under 11 U.S.C. § 636(2) which offers two choices — the adjudication of the debtor as a bankrupt or the dismissal of the Chapter X proceedings.
 
 
 19
 The Commission argues that the court erred because it was persuaded that Chapter X contemplates reorganization rather than litigation and liquidation. This attack goes to the action on the plan. It does not go to action taken after the plan was disapproved. The only issue before the court when it entered the November 8 order was whether the best interests of the creditors and stockholders required an adjudication or a dismissal. Neither the Commission nor the six appealing stockholders contend that the proceedings should have been dismissed. The court took the only other alternative. In so doing it did not foreclose the possibilities of, or rights to maintain, litigation.
 
 
 20
 The Commission emphasizes the mismanagement of Shawano and the duty of a Chapter X trustee to investigate and prosecute causes of action which may add to the assets of the debtor.[9] An acceptance of these views does not mean that a plan of litigation and liquidation should be automatically adopted. Lawsuits cost money and recovery is uncertain.
 
 
 21
 We are concerned with the realities and practicalities of the situation with which the trial court was confronted. True it is that Chapter X offers greater inducements for stockholders to advance money for the preservation of the debtor's estate[10] than are present under straight bankruptcy where effective control of litigation on behalf of the debtor is largely in the hands of the creditors.[11] The difficulty is that at the time of the entry of the November 8 order no stockholder had come up with the offer of any money to finance the proposed litigation. At that time the administrative expenses, secured claims that had been allowed, and preferred tax claims exceeded the amount of money in the court's hands. The only assets were the mining claims of a value of less than $150,000. No evidence was adduced that the claims were salable at that amount or any amount. The claims were netting to the Trustee some income but no showing was made as to how long such income could be expected. The estimated cost of the litigation was over $60,000. The possibilities of recovery were doubtful at the best.
 
 
 22
 In Securities and Exchange Commission v. American Trailer Rentals Co., 379 U.S. 594, 619-620, 85 S.Ct. 513, 527, 13 L.Ed.2d 510, the Supreme Court said that the issue of whether proceedings should be under Chapter X or Chapter XI does not permit "open-ended discretion by a district court to decide on a case-by-case basis" without reliance on the legal principles stated in the Court's opinion. Here we have the alternative of a dismissal of the Chapter X proceedings or an adjudication in bankruptcy. The thrust of the Commission's argument is that the court acted upon the erroneous principle that Chapter X may not be used for litigation and liquidation. We do not so interpret the court's decision nor our own decisions. This is not a case like In re Colorado Trust Deed Funds, Inc., 10 Cir., 311 F.2d 288, in which we sustained a trial court decision that a Chapter X petition was not filed in good faith or like Claybrook Drilling Co. v. Divanco, Inc., 10 Cir., 336 F.2d 697, in which the record showed that no plan was capable of consummation. We believe that those decisions are in line with the American Trailer Rentals decision in which the Supreme Court said that Chapter X was "not designed to prolong — without good reason and at the expense of the investing public — the corporate life of every debtor suffering from terminal financial ills."[12] A situation may arise to justify the approval of a plan to litigate and liquidate. That possibility does not make the Trustee's plan either fair or feasible. Lawsuits of the kind contemplated cannot be financed on either hopes or wishful-thinking.
 
 
 23
 In making its choice between the alternatives of adjudication in bankruptcy or dismissal of the Chapter X proceedings the district court did not ignore any legal principle of which we are aware. The resolution of the issue was within its discretion,[13] and its order may not be disturbed except for a clear abuse of discretion.[14] We believe that the discretion was properly exercised.
 
 
 24
 The appeal in No. 7699 was docketed in this court on March 19, 1964. The Securities and Exchange Commission, and the same six stockholders that appear as appellants in No. 7699, on August 24, 1964, filed in the district court a motion under Rule 60(b) (5) and (6), F.R. Civ.P., for relief from the November 8, 1963, order because of changed circumstances. A memorandum of appellant Karl S. Moras was submitted in support of the motion. Therein Moras stated that he personally knew individuals who had "orally indicated" a willingness to assist financially by depositing with Trustee Reynders "various sums of money" for the pursuit of litigation to collect "substantial money damages * * to be paid into, after collection, the Debtor's Trust Estate." Moras said that he believed that "it may be quite possible" to raise $10,000, including a pledge from him of $1,500.
 
 
 25
 Also attached to the motion is the affidavit of one of the attorneys for the Trustee in which he listed the claims paid, the claims to be contested, and the uncontested claims.[15] He estimated the remaining expenses in the Florida litigation at $10,000 and the costs of the prospective actions to be $50,000. Also submitted was a financial statement by the Receiver showing a balance on hand on July 31, 1964, of $25,049 against which there were accounts payable of $3,200 and preferred tax claims of $10,895. On September 18, 1964, the referee made a disbursement order, which is not attacked, for the payment of $16,266.
 
 
 26
 After a hearing the court denied the motion with an order which held that the new proposal did not differ substantially from plan submitted by the Trustee. Case No. 7956 is an appeal from this order by the same stockholders who appealed in No. 7699.
 
 
 27
 The first problem here is the propriety of the Rule 60(b) proceedings during the pendency of the appeal in No. 7699 because the motion seeks relief from the order at issue in that appeal. Ordinarily when a case is appealed the district court loses jurisdiction over it.[16] Although in bankruptcy interlocutory orders are appealable[17] and proceedings in bankruptcy are open for reexamination at any time prior to termination,[18] a serious question arises when relief is sought from an order which is under attack in a prior, pending appeal. In ordinary civil cases the rule is that after an appeal has been taken the district court retains jurisdiction to consider and deny a Rule 60(b) motion and, if it indicates that it will grant the motion, the movant may then ask the Court of Appeals to remand the case so that the district court may act.[19] If the motion is denied, the movant may appeal from the order of denial.[20] We see no reasons why the same principles should not apply in these bankruptcy proceedings. The district court properly considered the motion.
 
 
 28
 Again the attack is on the November 8 order. The points raised have nothing to do with the issue of whether the debtor should be adjudicated bankrupt or the Chapter X proceedings dismissed. In effect the motion is an attempt to modify the plan which was rejected on October 11. The modification is an equivocal offer to obtain from unnamed stockholders an uncertain amount of money which when added to the $1,500 which Moras says he will advance will approximate $10,000. The costs of the pending and anticipated litigation are six times that amount. The motion and its supporting material do not divulge any source from which the additional and necessary money will come. The motion was properly denied.
 
 
 29
 The motions in No. 7699 to dismiss the appeal, to strike the appeal, and to strike the briefs of the appellants and of the Securities and Exchange Commission are severally denied. The judgments in Nos. 7699 and 7956 are severally affirmed.
 
 
 
 Notes:
 
 
 [1]
 11 U.S.C. § 501 et seq. The petition was filed under 11 U.S.C. § 528
 
 
 [2]
 The first trustee resigned in November, 1959, and was succeeded by appellee Reynders
 
 
 [3]
 The last report of the Trustee showed receipts of $170,157 and disbursements for administrative expenses of $55,737
 
 
 [4]
 After the hearing the court allowed five secured claims
 
 
 [5]
 This appeal is our docket No. 7699 and will be considered before we discuss No. 7956
 
 
 [6]
 See Ashbach v. Kirtley, 8 Cir., 289 F.2d 159, 162
 
 
 [7]
 11 U.S.C. § 48, sub. a
 
 
 [8]
 See Jackson v. Vance, 10 Cir., 179 F. 2d 154, 156, certiorari denied 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355; Jelks v. Aetna Life Ins. Co., 10 Cir., 134 F.2d 870, 871; and Marcy v. Miller, 10 Cir., 95 F.2d 611, 612
 
 
 [9]
 See 11 U.S.C. § 567 and Williams v. Austrian, 331 U.S. 642, 656-657, 67 S.Ct. 1443, 91 L.Ed. 1718
 
 
 [10]
 See 11 U.S.C. § 516(2)
 
 
 [11]
 See 11 U.S.C. § 72
 
 
 [12]
 379 U.S. 618, 85 S.Ct. 526
 
 
 [13]
 In re Riddlesburg Mining Co., 3 Cir., 224 F.2d 834, 836
 
 
 [14]
 Oakland Hotel Co. v. Crocker First Nat'l Bank, 9 Cir., 85 F.2d 959, 960
 
 
 [15]
 The contested claims amounted to $181,321 and the uncontested claims to $75,587
 
 
 [16]
 Brasier v. United States, 10 Cir., 229 F.2d 176, 177, certiorari denied 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455; Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 188 F.2d 902, 904
 
 
 [17]
 11 U.S.C. § 47, sub. a; General Elec. Co. v. Beehive Telecasting Corp., 10 Cir., 284 F.2d 507, 508
 
 
 [18]
 Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005
 
 
 [19]
 Creamette Co. v. Merlino, 9 Cir., 289 F.2d 569, 570; Ferrell v. Trailmobile, Inc., 5 Cir., 223 F.2d 697, 699
 
 
 [20]
 Greear v. Greear, 9 Cir., 288 F.2d 466, 467