**NOVELL, INC., Plaintiff,**

v.

**NETWORK TRADE CENTER, INC. and Mark Bondiett, Defendants.**

**No. Civ. 2:95CV523G.**

United States District Court,
D. Utah,
Central Division.

July 1, 1999.

---

4. Defense counsel, at oral argument, stated that he was completely unaware that Dr. Framjee did

not maintain such a list.

Jeffrey J. Hunt, Parr, Waddoups, Brown, Gee & Loveless, Salt Lake City, UT and Thomas Karrenberg, Anderson & Karrenberg, Salt Lake City, UT, for Novell, Inc. ("Novell"), plaintiff.

James C. Bradshaw, Brown, Bradshaw, Anderson & Moffat LLP, for Network Trade Center, Inc. ("NTC") and Mark Bondiett ("Bondiett"), defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court pursuant to a Joint Motion to Partially Vacate Judgment. A joint memorandum and supporting materials were filed in support of the parties' motion, and argument was presented at a hearing on June 16, 1999. Novell, Inc. ("Novell") was represented by Jeffrey J. Hunt and Thomas Karrenberg. Defendants Network Trade Center, Inc. ("NTC") and Mark Bondiett ("Bondiett") were represented by James C. Bradshaw. Being fully advised, the Court now enters its Memorandum Decision and Order.

### FACTUAL BACKGROUND

Plaintiff Novell is a developer, manufacturer and distributor of computer software for personal computers. "NetWare" is one of Novell's computer software products which is designed to link separate computers together and allow the transfer of information between users. Defendant Mark Bondiett is the sole shareholder, director and officer of defendant Network Trade Center, Inc. NTC operated as a software distributor which sold software programs, including NetWare, to purchasers who then used the software in business or otherwise. NTC's modus operandi was to purchase NetWare in bulk at low prices, and then order the "upgrade" version of the latest release of NetWare by filling out an upgrade form using qualifying information from the old software. Typically, the upgrade form was completed under Bondiett's name and purchased from an authorized distributor, or sometimes from Novell directly. Once received, the "upgrade" software would be sold to a purchaser at a profit, or placed in inventory to be sold later. In June 1995, Novell filed this action against NTC and Bondiett asserting, among other causes of action, trademark infringement, unfair competition, false advertising and copyright infringement.

On August 18, 1997, a Memorandum Decision and Order was issued by this court which granted Novell's motion for summary judgment for trademark infringement, unfair

competition and false advertising. Defendants' cross motion for partial summary judgment on Novell's claim of copyright infringement was also granted. Thereafter, the court appointed a Special Master who held hearings to determine damages due to plaintiff. The Special Master submitted a report and recommendation which was later substantially approved by this court computing damages of approximately $26 million. Other relevant facts as they pertain to the underlying litigation are set forth in this Court's Memorandum Decision and Order entered in 1997,[1] and Order Affirming Award of Special Master entered in 1998.[2]

Prior to entry of final judgment, which was stayed at the request of both parties, plaintiff and defendants entered into lengthy settlement negotiations which ultimately failed due to the cantankerous relationship which had developed between the parties and to some degree between defendants and their counsel. The stay was lifted and this court entered final judgment on February 5, 1999 ("Final Judgment"). Both parties appealed to the Tenth Circuit, and an appeal is presently pending. Entry of the $26 million judgment has substantially devastated and paralyzed defendants. Defendant NTC was enjoined from conducting computer software business of any kind, and defendant Bondiett was forced into bankruptcy. Novell instituted aggressive but lawful collection proceedings to enforce its judgment. Bondiett then retained a new lawyer who facilitated reinitiation of settlement discussions with plaintiff. A comprehensive settlement of this lawsuit was finally reached, contingent upon this court's vacatur of that part of the ruling set forth in its prior Memorandum Decision and Order, and Judgment, which rejected Novell's claim of copyright infringement.

## ANALYSIS

Pursuant to Rule 60(b), Fed.R.Civ.Proc., the parties have jointly moved this court to vacate the portion of its Memorandum Decision that "NTC has not committed copyright infringement by distributing NetWare without authorization to end-users," as well as vacatur of the court's dismissal of Novell's Copyright Infringement Claim for Relief. The parties also join in seeking to leave intact all other aspects of the court's prior rulings. Partial vacatur is an essential element of the settlement agreed upon by the parties. Indication by this court of intention to order vacatur because of the settlement would enable the parties to seek an order from the Tenth Circuit remanding the matter to this court for that purpose.

An alternative ground to justify vacatur is the joint claim that there has been a change in intervening recent law and precedent. This court declines to vacate its prior rulings relating to copyright infringement on that basis.[3] It is not necessary to reach that issue on the merits, however, because vacatur on the basis that the parties have stipulated to settlement would be dispositive if sufficient equitable considerations and exceptional circumstances exist to justify exercise of this court's discretion in that regard. Accordingly, the court will now examine and discuss whether such considerations and circumstances are properly applicable to the case at bar.

1. *Novell, Inc. v. Network Trade Center, Inc., et al.,* 25 F.Supp.2d 1218 (D.Utah 1997).

2. *Novell, Inc. v. Network Trade Center, Inc., et al.,* 25 F.Supp.2d 1233 (D.Utah 1998).

3. The parties argue that recent case law, including particularly the Federal Circuit decision in *DSC Communications Corp. v. Pulse Communications, Inc.,* 170 F.3d 1354 (Fed.Cir.1999), has sufficiently changed to justify vacatur. *DSC Communications* upheld a copyright owner's reservation of rights as set forth in agreements which restricted use of software in question, thus supporting the characterization by the circuit court of end users as "non-owners" of copies of the software which they acquired. *Id.* at 1361–

62. The memorandum decision of this court was to the effect that NTC "owned" the copies of Novell Software which it acquired free from restricted agreement and therefore did not infringe Novell's copyright by selling those copies to end-users because of the doctrine of first sale under 17 U.S.C. § 109 of the Copyright Act. The particular facts of the case at bar are distinguishable from the facts in *DSC Communications.* Also, the Tenth Circuit has not addressed the issue. Accordingly, this court expresses no opinion as to whether the prior judgment of this court on the copyright issue should be vacated because of changed law or precedent. Nevertheless, for reasons set forth hereinafter, this court will vacate as moot that portion of its prior judgment because of settlement.

*Rule 60(b) Motions Addressed to District Court While Appeal is Pending*

■ Rule 60(b) Fed.R.Civ.Proc. authorizes relief from operation of a prior judgment in appropriate circumstances,[4] and the Tenth Circuit has ruled that "a Rule 60(b) motion is addressed to the sound discretion of the [district] court [and] gives the court a grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co., Inc.,* 518 F.2d 720, 722 (10th Cir.1975) (citations and internal quotations omitted), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976).

■ The Supreme Court has held that a Rule 60(b) motion properly may be addressed to the district court either before or after an appeal has been filed. *Stone v. INS,* 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995).[5] Similarly, the Tenth Circuit stated in *Aune v. Reynders,* 344 F.2d 835, 841 (10th Cir.1965), that:

> In ordinary civil cases the rule is that after an appeal has been taken the district court retains jurisdiction to consider and deny a Rule 60(b) motion and, if it indicates that it will grant the motion, the movant may then ask the Court of Appeals to remand the case so that the district court may act. If the motion is denied, the movant may appeal from the order of denial.

*Vacatur of Judgment May Be Sought Under Rule 60(b)*

■ The authors of Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2863, p. 349 (1995) suggest that the parties may properly request vacatur of a judgment under Rule 60(b)(5) on the ground that they have reached a settlement while an appeal is pending.[6] In this regard, the Supreme Court has declared that Rule 60(b) is the proper vehicle to seek vacatur of a judgment on the ground that the case has been settled. In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) the court said:

> [A] court of appeals presented with a request for vacatur of a district court judgment [on the basis of settlement] may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

*Vacatur of Judgment May be Ordered Because of Settlement in Appropriate Cases*

In *Bancorp* the Supreme Court set forth the narrow grounds upon which prior judgments may be vacated because of settlement:

> We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, *the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course.*

*Id.* at 29, 115 S.Ct. 386 (Emphasis added).

Since the *Bancorp* case, the Second Circuit has approved vacatur of a judgment because of settlement, finding "exceptional circumstances." In *Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc.,* 150 F.3d 149 151 (2d Cir.1998) the court said:

> The parties were thus locked in a dispute that they could end on a commercial basis satisfactory to both. However, a vacatur

---

4. Federal Rule of Civil Procedure 60(b)(5) and (6) authorizes relief from a judgment when ... "(5) a prior judgment upon which it is based has been reversed or otherwise vacated, or (6) it is no longer equitable that the judgment should have prospective application; or any other reason justifying relief from the operation of the judgment."

5. In *United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) the Supreme Court held in a criminal case that the District Court erred in denying a Rule 60(b) motion for lack of jurisdiction when the case was pending on appeal, stating that the "District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case."

6. In *Nestle Co., Inc. v. Chester's Market,* 756 F.2d 280, 282 (2d Cir.1985), the court held that a joint motion to vacate because a settlement agreement had been reached should be treated as a request for relief from judgment under Rule 60(b).

of the district court's order and opinion was a necessary condition of settlement. Unlike *Bancorp*, therefore, the victor in the district court wanted a settlement as much as, or more than, the loser did. MLB, by law had to continue to test the merits of the district court's opinion or risk its marks if it could not obtain a vacatur. The only damage to the public interest from such a vacatur would be that the validity of MLB's marks would be left to future litigation. In our view, these facts met the "exceptional circumstances" test of *Bancorp*.

In *Motta v. District Director of INS*, 61 F.3d 117, 119 (1st Cir.1995) (per curiam), the First Circuit vacated a lower court's opinion on the ground that "exceptional circumstances" tipped the equitable balance in favor of vacatur. In that case the government opposed settlement because it was a "repeat player before the courts" in alien deportation cases and thus was loathe to relinquish its right to appeal a decision that might harm it in future litigation. *Id.* at 118. Relying in part on *Motta*, the Second Circuit reviewed and found persuasive the "exceptional circumstances" which the First Circuit had found to exist:

> the court and the appellee, not the appellant, initiated consideration of settlement; all the parties had a significant interest in vacating the district court's opinion; and, that interest outweighed the social value of the precedent.

*Major League Baseball*, 150 F.3d at 151.

■ The case at bar is similar to *Major League Baseball* wherein the Second Circuit emphasized that both parties on appeal had good reason to seek vacatur. The infringing party-appellee initiated settlement to avoid the financial burden and risks of appeal. On the other hand, the appellant had a significant interest in vacatur since it was a "repeat player before the courts" and as such was concerned about the effect of the district court's decision in future litigation with alleged infringers. Settlement including vacatur presented a simple and inexpensive way to accommodate the interests of both parties.

In the case at bar, the judgment entered against defendants is in the crushing amount of approximately $26 million. The practical impact of that large judgment prevents NTC from ever conducting computer software business or for that matter business of any kind. Both defendants are presently unable to generate revenue of any significance, and Mr. Bondiett has been forced into bankruptcy. Novell has instituted vigorous collection measures, the effect of which has been to compromise defendants' ability effectively to maintain its present appeal. Should this court decline to vacate its judgment, they expose themselves to further costs and potential liability if the Circuit should overturn the district court's copyright ruling. Defendants, not Novell, initiated settlement. Defendants' counsel unequivocally represented to the court the desperate financial condition of the defendants, and that the terms of the settlement reflect the best interests of defendants in every respect.

Novell also has a substantial interest in partially vacating this court's judgment and settling the case. Novell is a "repeat player" and has other pending and potential cases against other alleged infringers. Novell is concerned that notwithstanding the facts in the case at bar which distinguish it from other cases, a precedent could be perpetuated causing mischief in other cases and in future litigation. Additionally, settlement presents the only plausible opportunity for Novell to recover any part of its judgment against defendants and avoid the increased costs of protracted collections and a lengthy appeal. There is no evidence before the court that Novell has exercised undue control over defendants, and both parties maintain and hold significant legal positions on the merits in the pending appeals.

Based upon the foregoing, this court finds "exceptional circumstances" to justify exercise of discretion in vacating its prior copyright rulings in order to facilitate settlement. The court further finds equitable considerations which favor settlement and that settlement would be in the best interest of both parties. Finally, the court finds that vacatur outweighs any harm the federal judicial system may suffer from losing legal precedent in this matter. If vacatur is granted, the copyright issue would be left open to be

decided another day in future litigation. Accordingly, this court indicates its intention to GRANT the joint motion of the parties to partially vacate its prior judgment relating to the copyright infringement claim for relief, consistent with instructions of the Tenth Circuit in the event of remand.