**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| THE SOCIETY OF LLOYD'S, | |
| Plaintiff-Appellee, | |
| v. | No. 05-4069 |
| | (D.C. No. 2:02-CV-204-TC) |
| WALLACE R. BENNETT; GRANT R. CALDWELL; CALVIN P. GADDIS; DAVID L. GILLETTE; JAMES R. KRUSE; EDWARD W. MUIR; KENT B. PETERSEN, | (D. Utah) |
| Defendants, | |
| and | |
| STEPHEN M. HARMSEN; KELLY C. HARMSEN, | |
| Defendants-Appellants. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In a previous appeal of this action, we affirmed the district court's grant of summary judgment to plaintiff Society of Lloyd's ("Lloyd's"). *Society of Lloyd's v. Reinhart*, 402 F.3d 982 (10th Cir.), *cert. denied*, 126 S. Ct. 366 (2005). While that appeal was pending, the Harmsen defendants filed a motion to set aside the judgments under Fed. R. Civ. P. 60(b). The instant appeal follows the denial of that motion. Our jurisdiction arises under 28 U.S.C. § 1291.[1] Since we conclude that the Harmsens failed to make the requisite showing to justify Rule 60(b)'s extraordinary relief, we affirm the district court's order.

[1] Because it raises the question of our jurisdiction, we must first address Lloyd's Motion for Summary Disposition Because of Mootness. Lloyd's argument in support of the motion is based on the false premise that it received nothing of value from the Harmsens that it could repay by way of restitution. While Lloyd's may have preferred to receive cash instead of credit notes, it nonetheless was able to file satisfactions of judgment as to the Harmsens and finally (or so it thought) end costly litigation against two more underwriters. Viewed in this light, Lloyd's undoubtedly received a benefit. It is also beyond dispute that the credit notes operated as cash. The Harmsens were "free to negotiate with Lloyd's, using the credit notes as they would cash, to compromise their disputed R&R debt." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, *17 (S.D.N.Y. Nov. 26, 2002). Lloyd's accepted the credit notes, just as it would a check, by crediting the Harmsens' accounts in accordance with the face value of the notes. The equitable remedy of restitution requires that "what has been lost to a litigant under the compulsion of a judgment . . . be restored thereafter, in the event of a reversal." *Atl. Coast Line R. Co. v. Florida*, 295 U.S. 301, 309 (1935). If the district court judgment were reversed or modified in this case, an equitable remedy could be fashioned to compensate the Harmsens for "what has been lost" to them consistent with the principles of restitution. Therefore, the appeal is not moot, and Lloyd's motion is denied.

## Background

### A. Facts and Procedural History

The storied history of the litigation between Lloyd's and the American participants in the English insurance market, including the Harmsens, is recounted in detail in *Reinhart* and the cases discussed in that opinion. We limit our recitation here to the facts and procedural history relevant to the instant appeal.

Lloyd's regulates an insurance market in London, England. Underwriters in the market are called Names. The Harmsens had the misfortune of becoming Names in the Lloyd's market as the industry was facing billions of dollars in losses. To avoid a wholesale collapse of the market, Lloyd's implemented a reconstruction and renewal plan, which required all Names to purchase reinsurance pursuant to what is called the Equitas Contract. When the Harmsens refused to pay the required premium under the Equitas Contract, Lloyd's sued them in England and obtained judgments that were upheld by the English appellate courts. Lloyd's then filed suit in federal court in Utah seeking to enforce the English judgments. The district court granted summary judgment to Lloyd's, and the appeal of that order was the subject of our opinion in *Reinhart.* We concluded that "the Utah Names [the Harmsens] were given a full and fair opportunity to litigate their claims before the English Courts." 402 F.3d at 1000.

Therefore, we held that the judgments obtained by Lloyd's in England were enforceable.

Lloyd's drafted judgments as to each of the Harmsens setting forth the amount in English pounds sterling that each owed to Lloyd's. In accordance with the Utah Uniform Foreign-Money Claims Act, the judgments included the following exchange rate provision:

> At the defendant's option, defendant may pay the number of United States dollars as will purchase the number of English pounds sterling then owing, with interest due, at a bank-offered spot rate at or near the close of business on the next banking day before the date of payment.

Aplt. App. at 177; *see* Utah Code Ann. § 78-22b-108(2) (1953). The Harmsens filed objections to the form of the judgments, but they did not object to the exchange rate language quoted above. The district court overruled the Harmsens' objections and signed the judgments on March 17, 2003.

While their appeal of the district court's summary judgment order was pending, the Harmsens filed a motion to set aside the judgments under Rule 60(b) based on the exchange rate provision. The Harmsens argued that the exchange rate applicable to their debt to Lloyd's was governed by Clause 18 of the Equitas Contract ("Clause 18"), not the Foreign-Money Claims Act. Alternatively, they argued that the court should have applied whatever exchange rate was in place on the date of the English judgments. The Harmsens pointed to other district courts

that had applied the exchange rate set forth in Clause 18 ($1.51 per English pound) and argued that such decisions collaterally estopped Lloyd's from contesting Clause 18's applicability here. Lloyd's countered that the Equitas Contract was silent as to the exchange rate applicable to American judgments expressed in English pounds and therefore resort to the Foreign-Money Claims Act was proper. Lloyd's attached to its response the Declaration of Nicholas P. Demery, its English solicitor, which the Harmsens moved to strike based on the parol evidence rule.

The district court denied the Harmsens' Rule 60(b) motion by order dated March 7, 2005. The court found that it lacked jurisdiction to set aside the judgments due to the pending appeal, but noted that it would decline to exercise its discretion under Rule 60(b) in any event. The court rejected the Harmsens' collateral estoppel argument because the decisions underlying that argument were issued *after* the judgments were issued in this case. The court also declined to depart from the law of the case and held that "the exchange rate applicable to the Harmsens' judgments is the rate expressed in the judgments . . . as required by the Utah Uniform Foreign-Money Claims Act." Aplt. App. at 543. The Harmsens' motion to strike the Demery Declaration was summarily denied.

    *B. Clause 18 of the Equitas Contract*

The Harmsens' primary argument on appeal centers on Clause 18. It provides in relevant part, "[w]here any amount payable by a Name hereunder in respect of his Name's Premium is an amount denominated in US Dollars . . . the Name shall instead pay an amount in sterling being one pound sterling for each US$1.51." *Id.* at 403-04. The Harmsens contend that this provision applies to Lloyd's judgments against them. They argue that Lloyd's refusal to honor Clause 18 is unconscionable given that it has steadfastly held them to every other provision of the Equitas Contract over their strong protests.

Lloyd's contends that Clause 18 has nothing to do with the American judgments that it obtained against the Harmsens. Mr. Demery explains that Clause 18 was included in the Equitas Contract when it was drafted in 1996 because certain Names had liabilities in U.S. dollars that were covered by their Equitas premium, which was calculated in English pounds. Thus, the prevailing exchange rate at the time was used to make the conversion into pounds. After the conversion, a Name who chose to pay in U.S. dollars had to tender whatever amount was necessary, depending on the prevailing exchange rate, in order to pay the equivalent amount of English pounds as that Name's Equitas premium. This interpretation, Lloyd's argues, is consistent with the language of Clause 18, which by its terms applies only to amounts denominated in U.S. dollars. Since its

judgments against the Harmsens are denominated in English pounds and not in U.S. dollars, Lloyd's argues that Clause 18 does not apply.

**Discussion**

*A. Standard of Review*

We review a district court's denial of a motion to set aside a judgment under Rule 60(b) for an abuse of discretion. *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006). "[I]n determining whether a district court abused its discretion, we are mindful that relief under Rule 60(b) is extraordinary and may only be granted under exceptional circumstances." *Id.* (quotation omitted). The district court correctly held that it lacked jurisdiction to grant relief under Rule 60(b) due to the pending appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (holding that the filing of a notice of appeal generally divests the district court of jurisdiction over aspects of the case involved in the appeal). However, since the court nonetheless explained why it would deny the motion, we will consider those reasons as alternative grounds for the court's decision. *Cf. Aune v. Reynders*, 344 F.2d 835, 841 (10th Cir. 1965) (explaining that a district court retains jurisdiction to *deny* a Rule 60(b) motion during pendency of appeal).

*B. Collateral Estoppel*

The Harmsens claim that since other federal courts have rejected Lloyd's interpretation of Clause 18, Lloyd's should be estopped from making its exchange rate argument in this case.[2] The district court rejected their collateral estoppel argument because the decisions on which the Harmsens relied were issued after the March 2003 judgments in this case. This holding was correct. When certain conditions are met, the doctrine of collateral estoppel "precludes a court from reconsidering an issue *previously* decided in a *prior* action." *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (emphasis added). A collateral estoppel argument cannot be based on a contrary holding that post dates the decision at issue. Therefore, the question in this case is not whether the district court committed error in refusing to apply the doctrine, as the Harmsens assert, but whether the doctrine was applicable at all, and it plainly was not. The district court was therefore free to accept Lloyd's interpretation of Clause 18.

C. *Judicial Estoppel and the Demery Declaration*

The Harmsens next contend that the district court erred by failing to invoke the doctrine of judicial estoppel against Lloyd's as to its exchange rate argument because Lloyd's previously agreed to the $1.51 exchange rate in an Indiana case.

---

[2] Specifically, the Harmsens rely on *Society of Lloyd's v. Tufts*, Civil Action No. 03-2316 (E.D. La. July 27, 2004) (applying the exchange rate as of the date of the English judgments), and *Society of Lloyd's v. Abramson*, No. 3:03-MC-001-P, 2004 U.S. Dist. LEXIS 16092, at *20 (N.D. Tex. Mar. 29, 2004) (applying the exchange rate set forth in Clause 18 of the Equitas Contract).

Lloyd's, through the Demery Declaration, counters that it never made such an agreement. According to Demery, Lloyd's did not agree to the $1.51 exchange rate in the Indiana case, but accidentally accepted less than the amount owed in that case due to his miscommunication with another Lloyd's employee.

The Harmsens charge the district court with committing additional error by failing to strike the Demery Declaration as being in violation of the parol evidence rule.

We recently explained the doctrine of judicial estoppel as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (quotation and alteration omitted). In this case, the district court rejected the Harmsens' judicial estoppel argument based on Demery's explanation of what happened in the Indiana case. Therefore, the strength of that argument on appeal turns on whether the district court's consideration of the Demery Declaration was proper.

The parol evidence rule is a substantive rule of evidence. Its application in federal diversity cases is, therefore, governed by state law. *See Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998). Utah recognizes the doctrine of partial integration under which parol evidence not inconsistent with the written

portions of a contract is admissible to prove a part not reduced to writing. *Stanger v. Sentinel Sec. Life Ins. Co.*, 669 P.2d 1201, 1205 (Utah 1983). In addition, "a court may consider extrinsic evidence if the meaning of the contract is ambiguous or uncertain." *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995). Whether a contract is partially integrated or ambiguous such that resort to parol evidence by the district court was proper is generally a question of law that we review de novo. *See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 832 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1331 (2006); *accord Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1131 (7th Cir. 1994). On the other hand, the district court's interpretation of the extrinsic evidence is a finding of fact that we review for clear error. *See Flying J Inc.*, 405 F.3d at 832; *Betaco*, 32 F.3d at 1131.

It is unclear in this case whether the district court admitted the Demery Declaration pursuant to the doctrine of partial integration or to clarify ambiguity in Clause 18. Either way, we agree with Lloyd's that the Equitas Contract is only partially integrated in terms of the exchange rate issue.[3] By its own terms, Clause 18 applies only to Equitas premiums that were "denominated in US Dollars." Aplt. App. at 403. It is entirely silent as to what exchange rate should apply to

---

[3]     Since the record contains only an excerpt from the Equitas Contract, and the parties cite to no other provision, we assume that there are no other provisions relevant to the parties' exchange rate arguments.

-10-

U.S. judgments expressed in English pounds. Therefore, the district court committed no error in relying on the Demery Declaration to clarify the scope of Clause 18 or as a basis to reject the Harmsens' judicial estoppel argument.

### D. Law of the Case

Finally, the Harmsens argue that the district court erred by applying the law of the case doctrine to the exchange rate provision of the judgments. We have held that "[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Concrete Works of Colo., Inc. v. City & County of Denver*, 321 F.3d 950, 992 (10th Cir. 2003) (alteration and quotation omitted). Here, application of Utah's Foreign-Money Claims Act to the judgments became the law of the case when the Harmsens failed to object to its application in their earlier appeal.

Although law of the case is not jurisdictional, we have nonetheless limited a district court's authority to deviate from it to the following scenarios: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* at 993. The Harmsens contend that this

case fits the third scenario. They argue that the district court's application of the Foreign-Money Claims Act was clearly erroneous and manifestly unjust because Lloyd's agreed to a $1.51 exchange rate in Clause 18 of the Equitas Contract. This argument, however, is foreclosed by the district court's interpretation of Clause 18, as aided by the Demery Declaration, as to which we find no error. Since no other exception to the doctrine applies, and as we find no merit to the Harmsens' remaining arguments, we conclude that the district court correctly upheld the judgments' exchange rate provisions as law of the case.

## Conclusion

Based on our review of the record, we conclude that the district court acted within its discretion in denying the Harmsens' motion and its order is hereby AFFIRMED.

Entered for the Court


Robert H. Henry
Circuit Judge